RUTH M. ABKARIAN and SEAWARD A. SAND, Plaintiffs, *v.* COUNTY OF NIAGARA and Others, Defendants.

Supreme Court, Niagara County, June 26, 1936.

*Raines & Raines [Eugene Raines of counsel], for the plaintiffs.*

*Glenn A. Stockwell, County Attorney [Robert L. Rice, Jr., of counsel], for the defendants.*

THOMAS H. NOONAN, Official Referee. In this action the plaintiffs seek:

(1) To recover damages to the land and flowing springs thereon, owned by said Ruth M. Abkarian and the spring leased to Sand, and alleged to have been caused by the improper diversion of the surface water from the west to the east side of the highway when it was reconstructed;

(2) To restrain the county of Niagara and the town of Lockport, and the proper officials of each, from continuing such diversion, and

(3) To compel said county and town to construct a drainage system to prevent said diversion.

When the action was reached for trial Mr. Justice HICKEY, by an order granted March 19, 1936, referred the same to the undersigned, an official referee of the Supreme Court, to hear and determine, and the trial was held at Lockport, N. Y., on April 27, 28 and 29, and May 11, 1936, and later briefs were filed by the attorneys for the respective parties.

There is little, if any, dispute as to the controlling facts in the case. The plaintiff Ruth M. Abkarian is the owner of a farm of about 110 acres located on the east side of Beattie Avenue road

in the town of Lockport, upon which are several flowing springs, one of which is protected by a building and was leased to the plaintiff Sand who bottled the water and sold it to people desiring pure drinking water. The land is lower than that on the west side of the road and is the natural drainage watercourse for the surrounding land for some distance, and the large spring has its outlet only a little above the level of the drainage channel. The natural flow of the water is generally southeasterly or southerly.

Beattie Avenue road runs south from the city line of Lockport and existed long before the plaintiff bought the farm. It had been hard surfaced but was out of repair when the reconstruction work was begun. The road slopes gently to the south but there is a slight rise in the land that prevents the water from the west side of the road from getting into the natural watercourse to the south without first crossing the road to the east. In the old road there was a culvert to the north of the Abkarian house through which water from the west side of the road passed along a natural watercourse in the pear orchard and joined the drainage channel at or near the spring. This culvert was left out of the reconstructed road and the surface water carried south in the ditch on the west side of the road to the culvert just south of the Abkarian house where it crossed the road and flowed into the drainage channel about 281 feet south of the spring, and one-half foot lower. After passing through the culvert the water spreads out over the flat land to the south of the spring. The plaintiffs claim this culvert was not there before the road was reconstructed, but I think they are mistaken. The engineer's maps for the reconstruction work, drawn some time before this action was begun, show the culvert, and if one had not been there a pool would have been formed on the west side of the road, because the water could not pass the rise in the land to the south.

There are no changes of grades in the reconstructed road that affect the situation. The hard surface is sixteen feet wide in a sixty-six foot right-of-way, leaving twenty-five feet on each side for the shoulders and ditches. Outside of the resurfacing of the road, which did not affect the flow of water, only three things were done that need be considered in the decision of the case: (1) The ditch on the west side of the road was cleared out and deepened eight-tenths to two and three-tenths feet; (2) the ditches from the adjacent farms into the road ditch cleaned out; and (3) the culvert south of the Abkarian house enlarged. The drainage area remains the same and none of the surface water is diverted from its natural course, except, possibly, that which went through the

culvert that was omitted, and this diversion was beneficial to the plaintiffs because it took the surface water *below* and not *to* the spring.

The road was reconstructed by the county of Niagara in accordance with plans and specifications prepared by or under the supervision of Richard M. Rumsey, its superintendent of highways, and approved by the Highway Department of the State of New York. The county alone is responsible for faults or defects in the construction. The duty of keeping the drainage channels clear belongs to the town, and this was done on the Abkarian property and other lands to the Transit road, a mile or more to the west, to facilitate the flow of the water for the benefit of all concerned.

The theory upon which the plaintiffs base their right of recovery is that the deepened ditch on the west side of the road permitted the surface water to pass off more rapidly and to accumulate in such quantities upon the land east of the road as to impede the flow of the water from the spring and the surface water from the north of it, and thus cause the flooding of the spring, which is six inches higher than the channel into which flows the surface water coming through the culvert, which water spreads out widely over the flat land below and south of the spring.

The county of Niagara was performing a governmental function in reconstructing the highway, and, although the tendency is toward holding municipalities to greater responsibility for their acts, I do not know of any statute or rule of law that will permit a recovery by the plaintiffs unless it is clearly shown that the work of the reconstruction of the road and not temperature or precipitation was the proximate cause of the flooding of the spring. The county certainly had the right to construct and maintain the ditches necessary for the proper drainage and protection of its road, and there is no competent evidence that the ditches are unusual in depth or otherwise.

The evidence as to whether or not the flow of the surface water from the west side of the road was increased by the reconstruction work is based upon casual observations and is not very convincing either way. Ruth M. Abkarian claims that the flow has been increased, while neighboring landowners think otherwise, but if the volume of surface water was increased the county would not be liable for damages so long as the flow of the water was not diverted from its natural course (*Anchor Brewing Co.* v. *Dobbs Ferry*, 84 Hun, 274; approved, *Howard* v. *City of Buffalo*, 211 N. Y. 241, 262; *Fox* v. *New Rochelle*, 240 id. 109; *Hentz* v. *City of Mt. Vernon*, 78 App. Div. 515, 519), and the county is not liable when collected surface water causes a brook to overflow its banks. (*Cashin* v.

*City of New Rochelle,* 256 N. Y. 190, 194; *Lynch* v. *Mayor,* 76 id. 60, 62.)

" The change of a grade of a street or highway, or of a railroad, does not give rise to an action for damages, unless the Legislature has provided for such damages." (*Burmaster* v. *State of New York,* 186 App. Div. 131, and cases cited at p. 133.)

I do not know of any legislation that makes a county liable for constructing and maintaining ditches on the sides of its roads to carry off surface water only through natural channels or watercourses.

At times of abnormal precipitation the spring was occasionally flooded before the road was reconstructed, and there is no evidence from any competent engineer to prove that the surface water from the west side of the road, and coming into the drainage channel, over flat land 281 feet south of the spring and six inches below its level could or would cause the flooding of the spring.

I have examined the cases submitted in support of the claims of the plaintiffs, but as most, if not all, of them relate, at least in part, to sewers and more complicated drainage problems, I do not think they are applicable to the facts in this case, where we are concerned only with the diversion or disposal of surface waters, through natural channels, from a drainage area that was unchanged by the reconstruction of the road. Upon all the facts in the case and the authority of the cases I have cited, I am of the opinion that the plaintiffs have failed to establish their cause of action and, therefore, the complaint must be dismissed upon the merits.

In view of the foregoing decision it is not necessary to discuss the other questions raised in course of the trial.

An order may be entered dismissing the complaint on the merits, but without costs unless the defendants insist upon costs as a matter of right.