■ PHILIP MORRIS et al., a Copartnership Doing Business as FRED AND PHILIP MORRIS STORES, Also MORRIS DEPARTMENT STORE, Appellants, v. STATE OF NEW YORK, Respondent. (Claim No. 31988.) — Appeal from a judgment of the Court of Claims dismissing a claim alleging the State was negligent in providing defective and inadequate plans and specifications for a State con-

struction project and in the manner of construction, which contract was awarded to White Oaks Excavators, Inc., for and on behalf of the State. On August 16, 1951, while the contract was being performed, certain streets in the City of Schenectady were flooded, causing damage to the claimants. It is conceded that a heavy, but not unprecedented, rain fell on the above date and that in a little more than two hours approximately three inches of water drenched the territory. In the City of Schenectady there existed an undeveloped and park-like section known as Pleasant Valley through which flowed Brandywine Creek into the Broadway culvert and eventually into the Mohawk River. There had been previous floods in the same location causing damage to the property of the claimants. A substantial amount of testimony was taken in attempting to establish liability against the State. The expert produced by the claimants, in answer to a hypothetical question, testified that the one circumstance which brought about the flood was the plugging of the entrance to the culvert under Broadway. That the expert was correct is demonstrated by what happened. During the early part of the storm, the contractor had men at the "trash rack" keeping the culvert open but because of the continuous rising water they eventually had to cease work and thereafter the trouble began. Later and while the storm was at its height, the contractor had a crane clearing the debris and the flood abated. The question then is: Was the plugging caused by the State, the contractor or the unusual heavy rainfall or a combination of these factors? The contract provided for the building of a spur of the Thruway which necessitated crossing Pleasant Valley and making drainage provisions for the creek. At the time in question, most of the land had been cleared, the multi-plated pipe — storm sewer — had been partly completed with the brook flowing into it; certain small dams along the brook, together with a weir — used for measuring the water and also slowing its flow — had been removed and various other deeds performed in the partial carrying out of the contract. Such was the situation when the storm heretofore described took place. There is no dispute that trash and debris, much of which came as a result of the construction, plugged the "trash rack" and culvert opening, causing the flood. The State's negligence is first predicated on the theory that the State, as distinguished from the contractor, was in control of the work. This was so, the claimants contend, because State engineers were in charge of the job. However, in situations where the work is performed by an independent contractor, the presence of State engineers is not for the purpose of *exercising control* over the *manner* and *method* of *construction* but to see that the *plans* and *specifications are adhered to by the contractor*. The lower court properly found that the State was not "in control" of the contract and did not interfere with the work being done by the contractor. The court found, and we concur, that the work being performed under the contract was not of an inherently dangerous nature. There is no showing that there was to be a greater amount of water as a result of the change but at most the possibility of an increase in the rate of speed of the surface water entering into the brook. There is no evidence that the culvert had been changed in any respect and as before mentioned, the court properly found that not only the contractor but the City of Schenectady assigned men to keep the culvert open. This was work under construction in contrast to a completed and accepted contract and thereafter the discovery of inadequate drainage. There must be a clear showing of defect. (*Incorporated Vil. of Flower Hill* v. *State of New York*, 7 A D 2d 940.) The cases relied upon by appellants are claims for damages subsequent to the completion of the work. (*Wallace Pond Ice Co.* v. *State of New York*, 259 App. Div. 938; *Kerhonkson Lodge* v. *State of New York*, 4 A D 2d 575.) Construction having to do with drainage is not of an inherently dangerous nature per se and this is particularly

true where the work is in progress, such as here. We find no merit to the contention that the State's duty to use care was nondelegable. A further claim of liability is made in that the plans and specifications as prepared were defective for the work to be done under the contract. Among the allegations under this category are that the work should have been from east to west; that the multi-plated pipes were not properly anchored at the time; that there were not sufficient catch basins, drop inlets and "trash racks"; that there was a failure to have a concrete spillway near the approach and entrance to the culvert. The factual finding by the lower court that the plans and specifications were designed according to proper and accepted engineering procedure and design and that the changes made by the supplemental agreement would not have affected the condition as it existed on August 16, 1951 is amply supported by the weight of evidence. Claimants' expert testified in this respect that he had not seen and was not familiar with the contract itself. While it is unfortunate that the claimants suffered damages for which they were in no way responsible, it does not follow that the State is liable. The testimony is decisive that the State was not negligent in whole or in part for the plugging of the Broadway culvert which admittedly caused the flood. The contractor White Oaks Excavators, Inc., is not a party to this action and we accordingly do not pass upon any questions of negligence as to it. Judgment unanimously affirmed, without costs. Present — Bergan, P. J., Coon, Gibson, Herlihy and Reynolds, JJ.