■ MONROE CONTRACTORS EQUIPMENT, INC., Respondent, v STATE OF NEW YORK, Appellant.—Judgment unanimously affirmed, with costs. Memorandum: The State appeals from a judgment awarding to claimant the sum of $22,250 as damages to personal property which claimant was storing on its four-acre lot in the Town of Penfield in the summer of 1971. Claimant alleged that the cause of the damage was the flow of water onto its property resulting from the negligent acts of the State in the course of building a new highway adjacent to claimant's property. The State contends that it merely changed the elevation of the land which it had taken for highway purposes, that only surface water therefrom flowed onto claimant's property and that, therefore, as a matter of law the State cannot be held liable for claimant's damages (see *Kossoff v Rathgeb-Walsh,* 3 NY2d 583, 589–590; *Barkley v Wilcox,* 86 NY 140, 143–144; *Lynch v Mayor, Aldermen & Commonality of City of N.Y.,* 76 NY 60; *Vanderwiele v Taylor,* 65 NY 341). However, there was substantial evidence that for years prior to the State's acquisition of the property and its "improvement" thereon, a natural ditch or channel had run across it adjacent to a farm lane or road which ran northerly along the east side of claimant's property, and the water from that ditch ran into Irondequoit Creek and thence into Irondequoit Bay. There was evidence that, years before, a corrugated pipe had been laid under that lane, which later became Panorama Trail South. The culvert pipe carried the water easterly under that road away from claimant's property, and thence the water ran on the other side of the road to the

creek. There was a sandpit nearby, and it appears that the area was sandy. When heavy rains fell, silt would be carried down the ditch and it gradually filled up the culvert pipe; but there was evidence that prior to 1971 there had never been any flooding of claimant's property. In the fall of 1970 the State began the construction of the Penfield Bypass highway on its lands adjacent to claimant's property. The State observed the ditch or water channel along South Panorama Trail, but did not see the culvert under the road, although its engineers saw water moving and thought that it was a spring. The State proceeded to fill the area on relocated Washington Street, and to "cap" the wet areas. It appears that there were heavy rains in June, 1971 and claimant's property was flooded, resulting in much damage to materials which it had stored there. The State's engineers admitted that a careful search was not made to find the source of the water before filling the area, and admitted being told in the summer of 1971 by the former owner that a culvert was under Panorama Trail Road that carried water from the ditch on the west side thereof to the east side and thence down to Irondequoit Creek. On substantial evidence the Court of Claims concluded that the State had negligently blocked the ditch or water course and thereby caused the flooding of claimant's land. Such action by the State rendered it liable for the resulting damage to claimant's stored materials (see *Buffalo Sewer Auth. v Town of Cheektowaga,* 20 NY 47, 51–52; *Bowman v Town of Chenango,* 227 NY 459, 462; *Drogen Wholesale Elec. Supply v State of New York,* 27 AD2d 763; *Wallace Pond Ice Co. v State of New York,* 259 App Div 938. Although the court did not make specific findings of fact, it reviewed the evidence at some length and clearly indicated in its decision that it found that a long existing water course which passed through a culvert near claimant's property was blocked by the State's negligent action in its construction work without discovering the culvert, thus resulting in flooding of claimant's land. With respect to damages, claimant submitted a 19-page exhibit of the cost in 1971 of the scores of items which it claims were damages or lost by reason of the State's conduct and claimant's labor in respect of such damages and in minimizing them. This exhibit was introduced into evidence through claimant's vice-president who testified that he prepared it based upon the items lost and damaged and on information as to prices which he obtained from suppliers, and the records of the labor expended and other items of cost. He testified that he was experienced in these matters and that the items charged on the exhibit were fair and reasonable. The State cross-examined him with respect to this exhibit and others, and it had opportunity to bring in witnesses to dispute it. The court accepted the amount claimed on the exhibit, except that it reduced it by about $3,000 because the court discredited the claim that the losses continued into the spring of 1972. From that reduction claimant has not cross-appealed. We see no reason to question the court's acceptance of claimant's evidence of damages. (Appeal from judgment of Court of Claims—negligence.) Present—Marsh, P. J., Moule, Simons, Dillon and Witmer, JJ.